Filed 11/21/22  P. v. Zepeda CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B299071 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA066801) |
| v. | OPINION FOLLOWING TRANSFER FROM SUPREME COURT |
| LETICIA MONTOYA ZEPEDA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hayden A. Zackey, Judge.  Reversed and remanded.

Sara H. Ruddy, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel C. Chung and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

This matter is before us following the Supreme Court's transfer with directions to vacate our prior decision (*People v. Zepeda* (July 20, 2020, B299071) [nonpub. opn.] (*Montoya II*)),[1] and reconsider the cause in light of *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*). We vacate our opinion in *Montoya II*. After reconsidering the cause, we find the court erred in summarily denying defendant Leticia Montoya Zepeda's petition for resentencing (former Pen. Code, § 1170.95, now § 1172.6)[2] without appointing counsel. We further find that the error cannot be deemed harmless under *Lewis*. Accordingly, we reverse the order denying Montoya's petition and remand for further proceedings in accordance with section 1172.6.

## BACKGROUND

Our summary of the factual background is based on the record of appeal and our opinion affirming Montoya's conviction in (*People v. Montoya* (Jan. 7, 2015, B243042) [nonpub. opn.] (*Montoya I*).[3]

Montoya and another codefendant, Sergio Flores,[4] were tried for willful, deliberate and premeditated murder (§ 187, count 1) and shooting from a

---

[1] Appellant changed her last name to Zepeda following her trial. For consistency, we refer to appellant by the surname "Montoya" throughout this opinion.

[2] While defendant's petition for review was pending, Penal Code section 1170.95 was renumbered section 1172.6 without substantive change. (Stats. 2022, ch. 58, § 10.) All further undesignated statutory references are to the Penal Code.

[3] We take judicial notice of our opinion and the record in *Montoya I*.

[4] Montoya and Flores were tried in a joint trial to separate juries. Flores is not a party to this appeal.

motor vehicle (former § 12034, subd. (b), count 3)).[5]  Firearm allegations were included in count 1 (§§ 12022.53, subds. (b), (c), (d), (e)(1)), and criminal street gang allegations were included in counts 1 and 3 (§ 186.22, subd. (b)(1)(c)).

At trial, it was undisputed that Flores fired three to four shots at the victim from a car that Montoya was driving.[6]  Jose Andalon, the shot-caller for Montoya's gang, testified on behalf of the People in exchange for dismissal of numerous charges and a favorable sentence in an unrelated case.  During his testimony, Andalon identified Montoya as a fellow gang member, established a motive for the shooting, and recited incriminating statements Montoya had made to Andalon after the shooting.[7]  The jury also heard

---

[5]  Former section 12034, subdivision (b) is presently found at section 26100, subdivision (b), which provides:  "Any driver or owner of any vehicle, whether or not the owner of the vehicle is occupying the vehicle, who knowingly permits any other person to discharge any firearm from the vehicle is punishable by imprisonment in the county jail for not more than one year or in state prison for 16 months or two or three years."  (Stats. 2010, ch. 711, § 4 (S.B. 1080).)

[6]  The firearm enhancements alleged in the joint information identified Flores as the individual who "personally" discharged the firearm.

[7]  During a phone conversation, Montoya told Andalon she and Flores were smoking PCP at her house when they both felt they had to do something about a prior shooting and Flores getting jumped.  Montoya and Flores walked to Flores's house to retrieve a rifle, and both walked back to Montoya's house, carrying the rifle between them.  After learning the location of several rival gang members, Montoya drove Flores, who sat in the front seat, and Jose Euyoque (another gang member) to the reported location.  After passing the house where the rival gang members were located, Montoya made a U-turn, turned off the headlights, and drove up to a group of people in front of the house.  Flores "told them where they were from.  Before [the victim] even answered, he pulled the trigger and shot them."  (*Montoya I*, *supra*, at p. 5.)

3

exculpatory statements that Montoya had made during a taped interview following her arrest.[8]

The jury was presented with two theories of direct aiding and abetting with regards to Montoya and the first degree murder charge: (1) aiding and abetting a willful, deliberate, and premeditated murder and (2) aiding and abetting a first degree murder committed by means of shooting from a motor vehicle. (*Montoya I, supra,* at p. 21; § 189, subd. (a).) Both theories required that the perpetrator harbored an intent to kill. (§ 189, subd. (a).) The jury was also presented with the natural and probable consequence theory, which provided that Montoya could be convicted of first degree murder if she directly aided and abetted an assault with a deadly weapon and should have reasonably known that the murder was a natural and probable consequence of the assault. (*Montoya I, supra*, at p. 20, fn. 7.)

By general verdict, the jury found Montoya guilty in count 1 of first degree murder, and in count 3 of shooting from a motor vehicle, with sustained findings on the firearm and criminal street gang allegations. Montoya also was found to have suffered a prior prison term. The court sentenced Montoya to 51 years to life, consisting of 25 years to life for murder, 25 years to life for the gang and firearm enhancements, and one year for the prior prison term. The sentence on count 3, shooting from a motor vehicle, was stayed under section 654.

In her direct appeal, Montoya challenged the jury instruction on the natural and probable consequences doctrine in light of *People v. Chiu* (2014)

---

[8] In her taped statement, Montoya denied retrieving the rifle with Flores. Montoya also claimed that she did not know Flores had the rifle in the car until she heard multiple gunshots from the passenger's side. (*Montoya I, supra*, at p. 6.)

4

59 Cal.4th 155 (*Chiu*), which the Supreme Court had issued while her case was pending. As part of her argument, Montoya asserted reversal of her murder conviction was required unless the verdict and evidence left no reasonable doubt that the jury made the necessary findings of directly aiding and abetting premeditated murder. She also argued the jury was not required to resolve the question whether she intended to aid and abet the premeditated murder, because it needed to find only that she aided and abetted an assault with a deadly weapon to convict her of first degree murder. The Attorney General argued that the evidence was overwhelming that Montoya directly aided and abetted a premeditated murder.

Despite our agreement with Montoya that it was error to give the natural and probable consequences instruction, we held that the error was harmless: "On this record, we are satisfied beyond a reasonable doubt that the jury based its first degree murder verdict on the legally valid theory that Montoya directly aided and abetted an intentional, deliberate, and premeditated murder. (*Chapman* [*v. California* (1967)] 386 U.S. [18,] 22–24.)" (*Montoya I*, *supra*, at p. 22.) We came to this conclusion after finding that Montoya, "if guilty at all, was guilty of first degree premeditated murder. [¶] The guilty verdict on count 3, shooting from a motor vehicle, indicates the jury rejected Montoya's exculpatory account of the shooting (provided during her custodial interview) in favor of her inculpatory statements to her friend Andalon. Her actions were identical to those of Flores, except that she drove the car while he pulled the trigger. . . . By her own conduct and incriminating statements to Andalon, Montoya demonstrated that she possessed the necessary mental state, [intentional aiding and abetting a premeditated murder], to be convicted of first degree premeditated murder. [Citations.]" (*Id*. at pp. 21–22.)

5

In April 2019, Montoya filed a petition in the superior court for resentencing pursuant to section 1170.95, now section 1172.6. The one-page petition consisted of checked off boxes on a prewritten form regarding eligibility for relief and appointment of counsel during the "re-sentencing process." The petition was signed by a deputy alternate public defender. Although the statute requires such information, the petition did not attach a declaration or affidavit, or any documentation from Montoya's prior conviction.[9]

On May 3, 2019, the trial court summarily denied Montoya's petition without appointing her counsel or holding a hearing. After summarizing the factual background from *Montoya I*, the trial court concluded that Montoya was ineligible for resentencing because she "clearly aided and abetted the killing. At a minimum, the evidence clearly demonstrates that [Montoya] was a major participant and acted with reckless indifference to human life."[10]

---

[9] Respondent notes that although these procedural deficiencies would have allowed the trial court to dismiss the petition without prejudice (§ 1172.6), the court proceeded to deny the petition at the "prima facie merits stage." As such, respondent concedes that "the court had a duty to appoint counsel under *Lewis*." (See Discussion, section C, *post*.)

[10] Although the trial court also found that the evidence established Montoya was a major participant who acted with reckless indifference, Montoya was not convicted under a felony murder theory, nor was the jury instructed on a felony murder theory. Rather, as previously stated, Montoya was prosecuted under only two theories: (1) directly aiding and abetting first degree murder (committed either by premeditation or by "means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death" (§ 189, subd. (a)), and (2) the natural and probable consequences theory of aiding and abetting. (*Montoya I, supra*, at p. 17.)

In her prior appeal from the court's summary denial of her section 1172.6 petition, Montoya argued that the court's ruling constituted prejudicial error. We rejected the contention, noting that "[i]n Montoya's direct appeal, we held that the trial court's error in instructing the jury on the natural and probable consequences doctrine was harmless beyond a reasonable doubt because 'the jury based its first degree murder verdict on the legally valid theory that Montoya directly aided and abetted an intentional, deliberate, and premeditated murder.'" (*Montoya II*, *supra*, at p. 16.) We then concluded that "[o]ur holding directly refutes the petition's conclusory allegation that Montoya was not a direct aider and abettor of premeditated murder" and thus "the [trial] court properly determined Montoya was ineligible for [§ 1172.6] relief as a matter of law." (*Ibid*.)

Montoya petitioned for review, and on September 30, 2020, the Supreme Court granted her petition. On October 12, 2022, the Court transferred the matter to us with directions to vacate the decision and reconsider the cause in light of *Lewis, supra,* 11 Cal.5th 952.

## DISCUSSION

A. *Senate Bill No. 1437 and Petitions under Section 1172.6*

S.B. 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It accomplished this purpose by amending section 188, defining malice, and section 189, defining the degrees of murder.

7

S.B. 1437 also added section 1170.95, now section 1172.6. (Stats. 2018, ch. 1015, § 4.)[11] Section 1172.6 allows a person convicted of felony murder, or murder under the natural and probable consequences doctrine, to "file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder [or] murder under the natural and probable consequences doctrine . . . . [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial . . . . [¶] (3) The petitioner could not presently be convicted of murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

Subdivision (b)(1) of that statute requires that the petition be filed with the court that sentenced the petitioner, and must include (a) a declaration by the petitioner that he or she is eligible for relief under the section; (b) the superior court case number and year of conviction; and (c) whether the petitioner requests appointment of counsel. Subdivision (b)(2) provides that the trial court may deny the petition without prejudice if any of the information required by subdivision (b)(1) is missing and cannot be readily ascertained by the court.

While defendant's petition was pending before it, the Supreme Court issued its decision in *Lewis, supra,* 11 Cal.5th 952. Following the Court's decision in *Lewis,* the Legislature amended section 1172.6 to codify a portion

---

[11] Prior to being renumbered section 1172.6, former section 1170.95 was amended to expand the petitioning procedure to individuals convicted of theories not relevant here, and to codify the holding of *Lewis, supra,* 11 Cal.5th 952 regarding a petitioner's right to counsel and the standard for determining the existence of a prima facie case. (Stats. 2021, ch. 551, §§ 1, 2.)

of that decision in subdivision (b)(3). Subdivision (b)(3) states: "Upon receiving a petition in which the information required by this subdivision is set forth or a petition where any missing information can readily be ascertained by the court, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." After providing the prosecution and petitioner additional time to submit briefings, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

The remainder of the statute sets forth the procedure for responding to, and the hearing on, the order to show cause, as well as post-hearing matters.

B.    *Montoya's Contentions*

Following the Supreme Court's transfer of the matter in this case, Montoya filed a supplemental brief. In it, she argues that the trial court committed reversible error under section 1172.6, subdivision (b)(3), and *Lewis*, *supra*, 11 Cal.5th 952, by summarily denying her petition for resentencing without appointing counsel.

Having reconsidered the matter, we agree with Montoya that the trial court erred in failing to appoint counsel (See *Lewis*, *supra*, 11 Cal.5th at pp. 961–970), and further conclude that the error cannot be deemed harmless in this case.

9

C.	*The Error Denying Montoya's Petition Without Appointing Counsel Cannot Be Deemed Harmless*

In *Lewis*, the Court held that once a petitioner files a facially sufficient petition under section 1172.6 and requests appointment of counsel, the superior court must appoint counsel before conducting any prima facie review. (*Lewis, supra,* 11 Cal.5th at p. 963 ["petitioners who file a complying petition requesting counsel are to receive counsel upon the filing of a compliant petition"]; accord, § 1172.6, subd. (b)(3).)  Respondent agrees, as do we, that the trial court erred by summarily denying defendant's petition for resentencing without appointing him counsel.  We further find the error prejudicial.

During the prima facie stage of review, the trial court "may look at the record of conviction . . . to determine whether a petitioner has made a prima facie" showing. (*Lewis, supra,* 11 Cal.5th at p. 971.)  However, "the prima facie inquiry under subdivision (c) is limited. . . . '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.]"  (*Ibid.*)  Appellate opinions, generally considered to be part of the record of conviction, "'might not supply all answers'" during this preliminary stage of review.  (*Id.* at p. 972, quoting *People v. Woodell* (1998) 17 Cal.4th 448, 457.)  Despite the trial court's ability to review a petitioner's record of conviction at this stage, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]"  (*Lewis, supra,* at p. 972.)

The *Lewis* Court also held that a superior court's failure to appoint counsel to represent a petitioner when assessing whether he or she has made a prima facie showing of entitlement to relief is state law error, reviewable for prejudice under *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis, supra,* at

10

pp. 958, 973–974.) The Court stated: "More specifically, a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing."'" (*Id.* at p. 974, quoting *People v. Daniel* (2020) 57 Cal.App.5th 666, 676.)

Montoya has met this burden.

The only document in our record that respondent relies upon to refute Montoya's allegations is our decision in *Montoya I*. Respondent's reliance on *Montoya I* is understandable given our statements in *Montoya II* that our holding in *Montoya I* (that the trial court's instructional error was harmless) established, in effect that "the jury *must* have found Montoya guilty of direct aiding and abetting premeditated murder" thereby rendering Montoya "ineligible for relief . . . as a matter of law." (*Montoya II*, *supra*, at pp. 17–18, italics added.)

However, if counsel had been appointed for Montoya when she filed her section 1172.6 petition, counsel could have made the argument that counsel now makes to this court—i.e., that the holding in *Montoya I* should not have the preclusive effect we gave it in *Montoya II*. That argument, we conclude, has merit.

That is, although some of our statements in *Montoya I*, could be read to suggest that the jury *actually* made certain findings, our ultimate determination turned on an evaluation of the trial evidence. Specifically, we found that the jury's verdict of guilty on count 3 (shooting from a motor vehicle), "indicates the jury rejected Montoya's exculpatory account of the shooting (provided during her custodial interview) in favor of her inculpatory statements to her friend Andalon." (*Montoya I*, *supra*, at p. 21.) This, in turn,

11

led us to conclude that "[b]y her own conduct and incriminating statements to Andalon," Montoya "demonstrated that she possessed the necessary mental state to be convicted of first degree premeditated murder" and left us satisfied that any instructional error was harmless. (*Montoya I*, *supra,* at pp. 21–22.)

While these types of record-based assessments are appropriate in evaluating *Chiu*-based instructional error,[12] our holding does not establish Montoya's ineligibility for section 1176.2 relief as a matter of law. (Cf. *People v. Harden* (2022) 81 Cal.App.5th 45, 52 ["the court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*"].)[13]

We therefore conclude that the error was not harmless and that the trial court must appoint counsel for Montoya and conduct further proceedings in accordance with section 1172.6. (See *Lewis*, *supra*, 11 Cal.5th at p. 962.)

---

[12] See, e.g., *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1146 [concluding error in instructing jury on natural and probable consequence theory was harmless in light of the "overwhelming evidence" that defendants shared the murderous intent of the perpetrator].

[13] For example, our observation that the jury's verdict on count 3 demonstrated that the jury rejected Montoya's statements to police (which included her statement that she did not know Flores had a gun), does not mean the jury *necessarily* found all of her statements incredible and/or all of Andalon's testimony to be credible. (See, generally, *People v. Dalton* (2019) 7 Cal.5th 166, 251 [noting that "a trier of fact is permitted to credit some portions of a witness's testimony, and not credit others"], internal quotation marks omitted.)

Moreover, the jury's verdict on count 3 established only that the jury found Montoya, as the driver of the vehicle, "knowingly permit[ted]" Flores "to discharge [his] firearm from the vehicle." (§ 26100, subd. (b).) This is not the same as an actual jury finding that Montoya acted with the intent required under the current definition of murder.

## DISPOSITION

The order summarily denying Montoya's petition for resentencing is reversed. The matter is remanded to the trial court with directions to issue an order to show cause and proceed in accordance with section 1172.6.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                                   WILLHITE, J.

We concur:


MANELLA, P. J.


CURREY, J.